## No. 10,471.

### KROGH, ET AL. *v.* DANIELSON, ET AL.

Decided March 5, 1923.   Rehearing denied April 2, 1923.

Action to enjoin the issuance of school bonds.   Injunction granted.

### *Reversed.*

1. SCHOOLS—*Bonded Indebtedness.*   Under the provisions of section 2, chapter 181, S. L. 1919, school districts of the third class may create a bonded indebtedness equal to 3½ per cent of the total assessed valuation of the property in the district.

2. STATUTES—*Repeal.*   Where a new law covers the entire subject matter and is intended to supersede a former statute, it will be held to repeal the earlier act.

3. SCHOOLS—*School House—Construction—Bonds.*   A vote of the electors of a school district instructing the directors to issue bonds for building a school house, necessarily involves as a part of the authority conferred, power to build the school house.

4. *Courts—Legislative Powers.*   Courts may not repeal or annul statutes, or set aside acts of school officers when those acts are within, and authorized by existing statutes.

*Error to the District Court of Adams County, Hon. S. W. Johnson, Judge.*

Messrs. PERSHING, NYE, FRY & TALLMADGE, Mr. LEWIS A. DICK, for plaintiffs in error.

Mr. HARRY BEHM, for defendants in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE defendants in error, plaintiffs below, resident taxpayers and qualified electors of school district No. 14 of Adams county, a district of the third class, brought this action against the plaintiffs in error, as directors of the

school district, to enjoin them from issuing and registering with the county clerk of Adams county, a proposed issue of bonds in the sum of $40,000, which the school directors claimed they were authorized to issue by a majority vote of the taxpaying electors of the district, at a special election called for that purpose. The complaint has two causes of action, the second alleging that the proposed bonds, if issued, would be illegal and void, because the result of the election would have been different, had not the judges of the election permitted disqualified electors to vote and had they not refused the votes of qualified electors. The allegations of the complaint were traversed by the answer. No evidence whatever was offered in support of the second cause of action.

The case was tried and decided upon the issues raised by the allegations of the first cause of action and the denials. These issues are, whether or not the proposed bonded indebtedness exceeds the statutory limit which the district is authorized to create, and whether or not it was necessary for the board first to be directed by the electors of the district, at a regular or special meeting, by a vote separate from that which was taken upon the bonds, before it could issue them.

The vote was taken upon the question: "Shall the Board of Education contract a bonded indebtedness in the sum of $40,000 for the purpose of erecting a school building within and for said School District by the issuance and sale of its negotiable bonds?"

The court below restrained the directors as prayed for, and they are here with their writ of error. There are no disputed facts for determination. The school district is of the third class. The assessed valuation of the district for the year 1921, which was the year preceding the election, is $1,280,410.00. There was at that time an outstanding indebtedness of $4,000. $40,000 in bonds were authorized, so that the total indebtedness would be $44,000.

It is the contention of the plaintiffs that section 11, of the Session Laws of 1917, page 429, which is an amend-

ment of section 11 of the Session Laws of 1915, page 403, which, in turn, amended section 11 of the Session Laws of 1913, page 560, fixes the limit of bonded indebtedness of any school district of the third class to a sum equal to 3½ *per centum* of 70 per cent of the total assessed valuation of such school district for the year immediately preceding the election at which bonds are authorized. If this contention is correct, the directors were not, and could not be, authorized to issue bonds in the amount of $40,000, because such total indebtedness would thereby exceed the statutory limit. The defendants, however, say that our General Assembly, (S. L. 1919, Sec. 2, Chap. 181, p. 601), passed a later act, the same being entitled: "An act relative to the contraction of indebtedness by school districts," which was intended to, and did, supersede and take the place of all previous existing statutes of the state on the subject of indebtedness of school districts, and that by section 2 of this act the bonded indebtedness of a district of the third class may be equal to, but it shall not exceed, 3½ *per centum* of the total assessed value of the property in such district for the year next preceding the date of the bonds. The 1919 statute repeals "all acts and parts of acts in conflict therewith." While repeals by implication are not favored, and even if this repealing clause is not express, but implied, which we do not decide, the later provision of 1919 is irreconcilably repugnant to that of 1917. It needs no argument to demonstrate that a tax of 3½ *per centum* of a total assessed valuation is different from, and more than, 3½ *per centum* of 70 per cent of that valuation.

In *Shover, et al. v. Buford, et al.*, 71 Colo. 562, 208 Pac. 470, decided after the district court rendered judgment in this action it was held that a school district of the third class may create a bonded indebtedness equal to 3½ *per centum* of the total assessed valuation of the property in the district. As the parties in that case did not question the applicability of section 2, chapter 181, Session Laws of 1919, this court had no occasion to decide the precise

question raised here. The decision, however, is, as we have stated, and had our attention been called to the claim which is made here by the plaintiffs, that the two sections may be construed together, and both enforced, thereby restricting the total bonded indebtedness in a district of the third class to 3½ *per centum* of 70 per cent of the total valuation, our decision would not have been different. The statute of 1919 covers the entire subject of contracting indebtedness by school districts. It was intended to supersede all former statutes on the subject. A case quite in point by this Court is *Shaff et al. v. Shaff,* 72 Colo. 184, 210 Pac. 400. In construing our divorce statutes of 1915 and 1917, it was there held that the later covered the entire subject matter and was intended to supersede the former statute, and for that reason must be held a repeal of the earlier act. The statutes there and those considered here, being in principle, so essentially alike, the ruling there is a precedent to be followed here.

The other question for decision is: Must the directors of the school district first obtain a vote of the resident taxpaying electors of the district, at a general or special meeting or election, specifically ordering the directors to build a school house, before bonds with which to pay for the construction may be issued? or, otherwise expressed: Did the majority vote of the qualified taxpaying electors, authorizing the directors to contract a bonded indebtedness for the purpose of erecting a school house, necessarily confer, or carry with it, the power to build it?

If what we have said about the effect of the 1919 statute is correct, and we think it is, it would logically follow that the vote of the electors, instructing the directors of the district to issue bonds for building a school house, necessarily involved as a part of the authority conferred, power to build the school house. We find nothing in the statutes which requires the electors of a district, at a general or special meeting, to vote solely upon the question of building a school house, although the electors undoubtedly have power to vote upon that question. We think they

have done so in legal effect, when they authorized this bonded indebtedness. Since the question submitted at the special election was, shall bonds be issued for the purpose of erecting a school building, we are not called upon to decide, and we express no opinion, as to whether these bonds may be issued until needed for that purpose, as our statute seems to contemplate. Neither do we express an opinon as to whether the proposed building may be erected until a site has been selected and paid for, which selection it is claimed by the plaintiffs, only the electors, and not the school board, are empowered to make. It may be, as suggested by plaintiffs' counsel that in this era of profligate expenditures, and while the fever for incurring indebtedness evidenced by tax-free instruments is so acute, the acts of public bodies should be carefully scrutinized, and they should be kept strictly within their legitimate powers. But courts may not go to the extent of repealing or annulling statutes on the subject, or set aside the acts of school officers, when those acts are within, and authorized by existing statutes. If greater restrictions should be placed upon school authorities and taxpaying electors than the statutes now provide, the General Assembly, not the courts, must provide them. The school directors, having complied with the statutory regulations, as they now exist, and the bonded indebtedness being within the statutory limit, the judgment of the district court was wrong, and it must be reversed and the cause remanded for further proceedings, if any, not inconsistent with the views expressed in the opinion, and with leave to the parties to amend their pleadings, if they desire.

MR. CHIEF JUSTICE TELLER not participating.